UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:11-cr-239-TWP-DML -01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| CHRISTOPHER JUSTIN EADS | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:11-cr-00239-TWP-DML |
| ) | |
| CHRISTOPHER JUSTIN EADS, ) | -01 |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Defendant Christopher Justin Eads has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 262. Eads seeks immediate release from incarceration based on his risk of severe illness should he contract COVID-19 for a second time. *Id.* For the reasons explained below, his motion is **DENIED**.

**I.   Background**

In 2012, a jury convicted Eads of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count 1); possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 2); and tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1) (Count 3). (Dkt. 72). As summarized by the Seventh Circuit on direct appeal, in 2012, law enforcement conducted a search of Eads's home and found two laptop computers, compact discs, thumb drives and a Bersa .40–caliber handgun. *United States v. Eads*, 729 F.3d 769, 772 (7th Cir. 2013). When detectives searched the living room laptop, they discovered 6,937 images of child pornography (including one image with text written over it offering to rent a child for sex) and over thirty minutes in total of child pornography videos. *Id.* Eads was arrested and taken into custody. From the jail, Eads called his wife, who had made statements to the police incriminating

2

Eads, and repeatedly demanded that she "make this right" and recant her statements. *Id.* at 773. Eads proposed that his wife write to the judge assigned to his case and state that Eads's former friend and houseguest, Nathan Asbury, was trying to set him up. *Id.* Eads's wife agreed to help him. *Id.* A jury found Eads guilty of all the counts. The Court sentenced Eads to 240 months of imprisonment on Count 1; 120 months of imprisonment on Count 2; and 120 months of imprisonment on Count 3, all counts consecutive, for a total of 480 months of imprisonment. Dkts. 140, 143. The Court also imposed a lifetime term of supervised release. *Id.* The Bureau of Prisons (BOP) lists Eads's anticipated release date (with good-conduct time included) as April 15, 2047.

Eads is now 36 years old. He is currently incarcerated at FCI Fairton in Fairton, New Jersey. As of November 15, 2021, the BOP reports that no inmates and 3 staff members at FCI Fairton have active cases of COVID-19; it also reports that 222 inmates at FCI Fairton have recovered from COVID-19 and that 1 inmate at FCI Fairton has died from the virus. https://www.bop.gov/coronavirus/ (last visited Nov. 16, 2021). The BOP also reports that 895 inmates at FCI Fairton have been fully inoculated against COVID-19. *Id.* That is, 99 percent of the inmates at FCI Fairton have been fully inoculated against COVID-19. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of Nov. 11, 2021, the BOP reports that FCI Fairton and its satellite camp have a total inmate population of 903).

Eads initially filed a *pro se* motion for compassionate release. Dkt. 262. The Court appointed counsel, dkt. 264, and appointed counsel filed a memorandum in support of the motion for compassionate release, dkt. 269. The United States filed a brief in opposition to the motion, dkt. 273, arguing that Eads medical records show that he had a completely asymptomatic case of COVID-19 in June 2020 and recovered without developing a serious case or dying by July 23. 2020, and his medical records to not support any conditions which would warrant compassionate

3

release. The Government also contends that Eads early release is inconsistent with the sentencing goals in 18 U.S.C. § 3553 and his enduring danger to the community.

Eads did not file a reply. However, the Court subsequently ordered Eads to show cause why the Court should not deny his motion for compassionate release because the risk presented by the COVID-19 pandemic no longer presents an extraordinary and compelling reason for his release. Dkt. 274. The Court also required Eads to explain whether he has received the COVID-19 vaccine and, if he has not received the COVID-19 vaccine, whether he has been offered the vaccine and refused it. *Id.* Eads responded to the Court's order, arguing that "to the extent that the vaccine has not proven effective to avoid reinfection of the more troubling emerging variants, then the availability of a vaccine at this time should be no barrier to relief." Dkt. 275 at 2. He also argues that with respect to the sentencing factors under § 3553, the Court should consider the alleged disparity between his sentence and other defendants convicted of similar crimes, as well as the failing health of his parents who need his help.[1] *Id.* at 6-7. Despite the Court's explicit instruction to do so, Eads's show-cause response did not include any information about his vaccination status. The motion is now ripe for decision. As explained below, Eads has not presented an extraordinary and compelling reason warranting relief under § 3582(c)(1)(A). Thus, his motion must be **denied**.

## II.   Discussion

Eads seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 262. Specifically, he contends that his underlying medical conditions (headaches and constant pain in his eye; acute and chronic laryngitis; nasal fracture and deviated septum; gastro-esophageal reflux disease without esophagitis; dental care extending into

---

[1] The Court interprets Mr. Eads's submissions to raise his health conditions in relation to the COVID-19 pandemic as his only extraordinary and compelling reason to grant immediate release. Dkts. 262; 269 at 1. His discussion of his parents' health and the alleged sentencing disparity are contained only within the § 3553 analysis. Dkts. 269 at 17-20; 275 at 3-7.

4

the pulp and pulpal necrosis, with unsatisfactory restoration of the existing tooth; lower back pain; prior COVID-19 infection; and possible post-concussive syndrome), which make him more susceptible to severe complications from COVID-19, combine with the BOP's inability to control COVID-19 outbreaks in their facilities to establish extraordinary and compelling reasons to reduce his sentence to time served. *Id.*

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that a court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). But, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

The risk that Eads faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release him.[2] While the Court sympathizes with Eads's fear of becoming infected with the virus, the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's

---

[2] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court would typically consider the rationale provided by Mr. Eads's warden in denying Mr. Eads's administrative request for relief. Mr. Eads represents, however, that he submitted his request to the warden on September 1, 2020 but has not yet received a response. Dkt. 262 at 3. Thus, there is no decision for the Court to consider.

spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD01, dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction).

Eads medical records to not show that he suffers from any health conditions that, according to the CDC (Centers for Disease Control and Prevention), can make you more likely to get severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 15, 2021). On that basis alone, the Court declines to find extraordinary and compelling reasons warranting relief. This Court has routinely denied such motions from similar defendants, even when they are incarcerated in a "hotspot" for COVID-19 infections. *See United States v. Dyson*, 2020 WL 3440335, at *3 (S.D. Ind. June 22, 2020) (collecting cases).

The result would not change if the Court assumed that Eads suffers from such a condition. Earlier in the pandemic, the court in this district found on several occasions that a defendant had established extraordinary and compelling reasons warranting release when the defendant suffered from conditions that the CDC recognized as increasing the risk of severe COVID-19 symptoms. *See*, *e.g.*, *United States v. Johnson*, No. 1:99-cr-59-JMS-DML-06, dkt. 317 (S.D. Ind. Mar. 11, 2021). Underlying those holdings was the understanding that the virus was difficult to control in a prison setting, in part because no vaccine had yet been made widely available.

The situation has now changed dramatically. Three vaccines are being widely distributed in the United States. Although no vaccine is perfect, studies have provided a growing body of evidence that mRNA COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings, reducing the risk of COVID-19, including severe illness by 90 percent or more among people who are fully vaccinated. *See* https://www.cdc.gov/coronavirus/2019-

ncov/vaccines/effectiveness/work.html (last visited Nov. 15, 2021). The CDC also reports that the COVID-19 vaccines authorized for use in the United States offer protection against Delta variant and other variants currently spreading here, https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html (last visited Nov. 15, 2021). Even after Delta variant became the most common variant of COVID-19, the CDC reports that fully vaccinated people's risk of being hospitalized or dying from the virus was reduced by 10 times as compared to unvaccinated people. *See* https://www.cdc.gov/mmwr/volumes/70/wr/mm7037e1.htm (last visited Nov. 15, 2021). The vaccines are not 100% effective, and some vaccinated people may still get sick. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html. The CDC reports, however, that mRNA COVID-19 vaccines have been shown to provide protection against severe illness and hospitalization among people of all ages eligible to receive them, including people 65 years and older who are at higher risk of severe outcomes from COVID-19. *Id.*

COVID-19 vaccines have been made widely available within the BOP. As of November 17, 2021, the BOP has administered more than 245,000 doses of the vaccine and has fully inoculated tens of thousands of BOP staff members and inmates. *See* https://www.bop.gov/coronavirus/ (last visited Nov. 15, 2021). As stated above, Eads has not informed the Court whether he is vaccinated or not. Assuming that he is one of the 99% of the inmate population at FCI Fairton that has been vaccinated, his chances of being infected with COVID-19 and suffering severe symptoms if he is infected have been dramatically reduced. Moreover, the fact that nearly every other inmate at FCI Fairton is vaccinated should provide Eads with additional protection against infection. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Nov. 15, 2021) ("In addition to providing protection against COVID-19, there is increasing evidence that COVID-19 vaccines also provide

protection against COVID-19 infections without symptoms (asymptomatic infections). COVID-19 vaccination can reduce the spread of disease overall, helping protect people around you."). Unsurprisingly given the vaccination levels, the BOP has also met with recent success in controlling the COVID-19 virus at FCI Fairton. As noted above, the BOP reports that no inmates at FCI Fairton currently have active cases of COVID-19.

To the extent Eads has declined the vaccine and remains unvaccinated, the Seventh Circuit recently held that COVID-19 could not be an extraordinary and compelling reason for release for an inmate who had declined the vaccine without an adequate medical justification. *See United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021). In so holding, the court reasoned, "[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *Id.* at 803.

Here, 99% of the inmates at Eads's facility have been fully vaccinated, and there are no inmates with current COVID-19 infections at his facility. While Eads's vaccination status is unknown, he is either vaccinated at this point and therefore at a substantially reduced risk of severe illness from COVID-19, or he has refused the vaccine and failed to allege any medical reason for doing so. Given these facts and the rationale of *Broadfield*, the Court declines to exercise its discretion to find that the risk Eads faces from the COVID-19 pandemic constitutes an extraordinary and compelling reason warranting release under § 3582(c)(1)(A). *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-3, dkt. 274 (S.D. Ind. Feb. 16, 2021) (finding no

8

extraordinary and compelling reason based on COVID-19 risk where defendant had been fully vaccinated).

Because the Court declines to find extraordinary and compelling reasons warranting release, it need not determine whether the § 3553(a) factors warrant release.

### III. Conclusion

For the reasons stated above, Eads's motion for compassionate release, dkt. [262], is **denied**.

**IT IS SO ORDERED.**

Date: 11/23/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel